

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-19-00069-CV

_____

PHUONG NGUYEN AND E-2 OPTICS, LLC AND SOUTHWEST
NETWORKS, INC., Appellants

V.

ABLE COMMUNICATIONS, INC., Appellee

On Appeal from the 236th District Court
Tarrant County, Texas
Trial Court No. 236-298983-18

Before Sudderth, C.J.; Womack and Wallach, JJ.
Memorandum Opinion by Justice Wallach

**MEMORANDUM OPINION**

This is an accelerated interlocutory appeal under the Texas Citizens Participation Act (TCPA), Texas's anti-SLAPP law. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005. Appellant E-2 Optics, LLC (E2) is an information technology services company with offices nationwide. In 2014, E2 began operating in the Dallas/Fort Worth area. In late 2017 and early 2018, it bid for and won four contracts with DFW International Airport (DFW). Two of the contracts DFW awarded to E2 were for fiber installation, and the last time that DFW had solicited public bids for those services, it awarded the contracts to Appellee ABLe Communications, Inc. Having historically faced few competitors in bidding for public contracts, ABLe expected to win the contracts again.

One of ABLe's employees, Appellant Phuong Nguyen, left to work for Appellant Southwest Networks, Inc., a subcontractor for E2 on two of the DFW contracts awarded to E2. After ABLe representatives learned that Nguyen was performing work under those DFW contracts, they concluded that Nguyen had provided E2 with ABLe's confidential information and was breaching a noncompetition agreement he had signed while at ABLe. ABLe sued Nguyen, E2, and Southwest. All three defendants filed motions to dismiss under the TCPA. The trial court denied the motions, and they now appeal.

In one issue, Appellants asks whether the trial court erred by denying their TCPA motions. Because we determine that, except for the fraud by nondisclosure claim against Nguyen, the TCPA applies and that ABLe did not make a prima facie case for

2

each essential element of the claims challenged by Appellants, we reverse the trial court's order and remand this case to the trial court for entry of a judgment of dismissal as to the challenged claims[1] and a determination of costs and fees. *See id.*; *see also* Act of May 18, 2011, 82nd Leg., R.S., ch 341, H.B. 2973, § 2, (amended 2019) (current version at Tex. Civ. Prac. & Rem. Code Ann. § 27.009).[2]

## Background

From the parties' pleadings and motions thus far, we draw the following facts. In 2014, DFW solicited public bids for a one-year contract for Sumitomo fiber installation services and a one-year contract for traditional fiber installation services (the 2014 fiber contracts). Both contracts had options to renew for three (Sumitomo) or four (traditional fiber) additional one-year terms. ABLe bid for and won those two contracts.

In 2017, with the 2014 fiber contracts nearing their expiration, DFW again solicited public bids for those services. As before, for both the Sumitomo fiber installation services and the traditional fiber installation services, the contracts had one-year terms with options to renew for three or four additional one-year terms. ABLe

---

[1]As noted below, Nguyen's motion to dismiss did not seek dismissal of the breach of contract claims against him. We express no opinion on ABLe's ability to prevail on its claims to which the TCPA does not apply.

[2]For ease of reference, when citing to a section of the TCPA that has been amended since the filing of this suit, we initially cite the session law of the now-amended section, but subsequent citations will simply cite to the current section number.

and E2 both submitted bids for both contracts. Around the same time, DFW solicited public bids for contracts to provide two other technology services: audio/visual (A/V) equipment and installation services and copper wire services. ABLe was not the current provider of those services, but it submitted a bid for the A/V contract. Between November 2017 and May 2018, DFW awarded E2 all four contracts. DFW has minority subcontractor requirements, and Southwest agreed to be E2's minority subcontractor on the two fiber contracts and the A/V contract.

Nguyen began working for Southwest in January 2018. Before starting at Southwest, Nguyen had worked for ABLe for seventeen years, and his work at ABLe included performing services at DFW under the 2014 DFW fiber contracts. When he started at ABLe in 2000, Nguyen signed an acknowledgment of ABLe's confidentiality policy (the Confidentiality Agreement). Under that agreement, Nguyen agreed to neither disclose nor use ABLe's proprietary information or trade secrets. On May 2, 2017, shortly after ABLe developed concerns about Nguyen's job performance, ABLe required him to sign a noncompetition, nonsolicitation, and nondisclosure agreement (the Noncompete).[3] In the Noncompete, Nguyen agreed that during and after his employment, he would not share ABLe's confidential information and that for two years after leaving ABLe, he would not become employed by an ABLe competitor or

---

[3]ABLe pled that it "work[ed] through" those concerns with Nguyen but that Nguyen continued to have performance issues for the next several months and that ABLe management discussed those issues with Nguyen.

4

induce ABLe employees or customers to terminate their relationship with ABLe. The Noncompete restricts Nguyen from working for an ABLe competitor in any capacity, and it contains no geographical limitation and does not limit its restrictions to those ABLe customers or employees with whom he had dealings while employed with ABLe.

In November 2017, Nguyen applied for an A/V position with E2. E2 interviewed Nguyen but did not hire him. In January 2018, he applied at and was hired by Southwest; according to Nguyen, he applied there after his supervisor, Rick Lopez, ABLe's vice president and chief of operations and an ABLe shareholder, suggested that he do so. Nguyen provided his two-week's notice to ABLe on Monday, January 8, 2018, but did not stay the full two weeks. He started his new job with Southwest the next Monday, January 15. Before he left ABLe, Nguyen and ABLe had discussions about ABLe's amending the Noncompete to allow him to work at Southwest in some capacity, but the parties never signed an agreement waiving or amending the Noncompete's terms. Nguyen told Southwest's co-founder, Robert Hernandez, that he had a noncompetition agreement with ABLe but that ABLe was willing to waive it for him to work at Southwest. Hernandez stated in an affidavit that he "did not inquire any further about the non-competition agreement because he was friends with ABLe's owners, and they frequently hired the others' employees." Southwest assigned Nguyen to work on projects for multiple Southwest clients, including Capital One and Novartis Pioneer Natural Resources. In February 2018, ABLe's attorneys sent Nguyen a letter stating that ABLe had become aware of facts

5

suggesting that he might be working for Southwest or E2 and "may have been involved in bidding jobs against [ABLe] and soliciting employees to leave" ABLe, and it demanded that he "immediately cease and desist any and all actions that violate[ed] [his] obligations" under the Noncompete.

DFW awarded the two fiber contracts to E2 on March 8, 2018. Southwest had agreed to provide thirty percent of the workforce for those contracts, and it assigned Nguyen to work on them. Around the same time, several other ABLe employees left the company and accepted jobs with E2, and during the interview process for those employees, E2's recruiter sometimes asked Nguyen for his opinion on their work. For a few of the employees, after they had accepted employment with E2, one of E2's project managers asked Nguyen to ask the employees about when they would be available to start.

Nguyen did not leave his job with Southwest, and ABLe filed suit against him for breach of the Confidentiality Agreement and the Noncompete.[4] By amended

---

[4]Nguyen's TCPA motion did not seek dismissal of these two claims, and we therefore do not consider here whether the TCPA is applicable to them, and we do not address the merits of those claims. *See Robert B. James, DDS, Inc. v. Elkins*, 553 S.W.3d 596, 607 (Tex. App.—San Antonio 2018, pet. denied) (stating that the TCPA requires courts to treat any claim "on an individual and separate basis" (citation and internal quotation marks omitted)); *see also Shields v. Shields*, No. 05-18-01539-CV, 2019 WL 4071997, at *5 (Tex. App.—Dallas Aug. 29, 2019, pet. denied) (mem. op.) (treating the plaintiff's claims on an individual and separate basis for evaluating the timeliness of the defendant's TCPA motion as to each of the plaintiff's claims). However, ABLe alleged that E2 and Southwest conspired with Nguyen to breach these agreements and that they aided and abetted him in doing so, and we therefore discuss evidence related to Nguyen's alleged breach of the agreements to the extent necessary

petition, it added E2 and Southwest as defendants, alleging claims for fraud by nondisclosure, aiding and abetting,[5] tortious interference, misappropriation of trade secrets, civil theft, and civil conspiracy. ABLe also sought temporary and permanent injunctive relief and requested that the trial court reform the Noncompete if the trial court determined that it was too broad.

E2 filed a motion to dismiss ABLe's claims under the TCPA. E2 argued that because all of ABLe's claims against it arose out of E2's "purportedly 'recruiting Nguyen,' 'communicating with' Nguyen, and 'soliciting and recruiting numerous ABLe employees,'" the claims arose "out of [E2's] exercise of the rights of free speech and association, as defined by the TCPA."

With its motion, E2 attached Nguyen's declaration. In his declaration, Nguyen asserted that he had no role in ABLe's bid submission process in 2014 or 2017, that cabling and fiber optic companies all use the same general practices throughout the market, that he has not used any of ABLe's confidential or trade secret information in conjunction with any other project, and that his boss at ABLe encouraged him to apply at Southwest. E2's president and CEO stated in an affidavit that Nguyen did not give

---

to resolve whether the TCPA required the dismissal of the conspiracy and aiding and abetting claims.

[5]The Supreme Court of Texas has never expressly recognized "aiding and abetting" as a distinct cause of action, *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 225 (Tex. 2017), but for purposes of this opinion we assume such a tort exists.

her ABLe's confidential information and that she did not use any such information in preparing E2's DFW bids. The E2 manager who oversees E2's DFW operations stated in an affidavit that Nguyen's job requires only general industry knowledge and experience. E2's corporate recruiter stated in an affidavit that Nguyen did not identify or recruit ABLe employees and that she contacted ABLe employees to recruit them after they had posted their resumes or contact information on public forums such as job sites and LinkedIn.com.

Nguyen and Southwest also filed motions to dismiss under the TCPA. Nguyen's motion adopted E2's motion. Southwest's motion included the same grounds as E2's motion and attached the affidavit of Southwest's Hernandez. Hernandez stated that Southwest was not involved in preparing E2's bid, that Nguyen did not provide Southwest with any information that he obtained while working at ABLe, and that "[t]he only information that Southwest, as the minority subcontractor, uses is its general knowledge, skill[,] and experience in the cabling industry that it has developed since 1995." ABLe filed a response that addressed all three TCPA motions. In that response, ABLe disagreed that the TCPA applied but argued that if it did, the commercial speech exception also applied because "the conduct at issue arises out of the sale of goods and services for profit."

At the conclusion of the hearing on the motions, the trial court orally ruled that the TCPA did not apply to the facts of the case, but it signed no written order. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.008(a) (providing that TCPA motions that are not

8

timely ruled on are overruled by operation of law). Nguyen, E2, and Southwest now appeal.

## Discussion

### I.    Dismissal under the TCPA

To obtain dismissal under the TCPA, a movant must establish by a preponderance of the evidence that the TCPA applies to the challenged legal action. *Id.* § 27.005(b); *Beving v. Beadles*, 563 S.W.3d 399, 404 (Tex. App.—Fort Worth 2018, pet. denied). Whether the movant satisfied that requirement is a legal question that we review de novo. *Beving*, 563 S.W.3d at 404. Once the movant establishes the applicability of the TCPA to the nonmovant's legal action, the nonmovant may avoid dismissal only by establishing with clear and specific evidence a prima facie case for each essential element of the nonmovant's claim. Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c); *Lane v. Phares*, 544 S.W.3d 881, 886 (Tex. App.—Fort Worth 2018, no pet.). A prima facie case means "evidence sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted." *In re Lipsky*, 460 S.W.3d 579, 590 (Tex. 2015). However, even when the nonmovant meets that burden, the trial court must nevertheless dismiss the legal action if the movant then "establishes by a preponderance of the evidence each essential element of a valid defense to the nonmovant's claim." *Beving*, 563 S.W.3d at 404; Tex. Civ. Prac. & Rem. Code Ann. § 27.005(d).

9

## II. The TCPA applies to most of ABLe's claims.

Appellants first argue that each of the claims they challenged in their TCPA motions—all of ABLe's claims except the breach of contract claims against Nguyen—are based on, relate to, or are in response to Appellants' free speech rights. With one exception, we agree for the reasons set out below.

### A. The TCPA allows dismissal of claims based on, relating to, or in response to free speech.

Under the version of the TCPA that applies here, a defendant may move to dismiss a legal action that "is based on, relates to, or is in response to a party's exercise of the right of free speech." Act of May 18, 2011, 82nd Leg., R.S., ch 341, H.B. 2973, § 2 (amended 2019) (current version at Tex. Civ. Prac. & Rem. Code Ann. § 27.003); *Bedford v. Spassoff*, 520 S.W.3d 901, 904 (Tex. 2017). Under both the previous and current version of the TCPA, the "exercise of the right of free speech" is defined as "a communication made in connection with a matter of public concern." Tex. Civ. Prac. & Rem. Code Ann. § 27.001(3). The applicable version of the TCPA defines a "matter of public concern" to include "an issue related to: (A) health or safety; (B) environmental, economic, or community well-being; (C) the government; (D) a public official or public figure; or (E) a good, product, or service in the marketplace." Tex. Civ. Prac. & Rem. Code Ann. § 27.001(7).

"The TCPA casts a wide net." *Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 894 (Tex. 2018). We may not narrow its scope by ignoring its plain language or by

10

reading language into the statute that is not there. *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 900–01 (Tex. 2017). Accordingly, if an alleged communication has even a tangential relationship to a matter of public concern, then for purposes of the TCPA, the communication is based on, relates to, or is in response to a party's exercise of the right of free speech. *Id.* at 900. The communication need not be made in a public forum, so long as the communication involves a public subject. *Id.*; *Budri v. Humphreys*, No. 02-18-00070-CV, 2018 WL 3763920, at *2 (Tex. App.—Fort Worth Aug. 9, 2018, pet. denied) (mem. op.).

## B. Most of ABLe's challenged claims are based on, relate to, or respond to Appellants' exercise of their free speech right.

In ABLe's second amended petition, it alleged the following facts. Nguyen "apparently [had been] providing confidential information to his new employers to enable them to win" the 2018 fiber contracts. "[B]ecause of the confidential information [that Nguyen] possesses, the working knowledge of [DFW,] which he acquired while an employee of ABLe, his professional goodwill, and his ability to help them procure additional contracts at DFW Airport," E2 and Southwest employed Nguyen and "use[d] him as their primary communicator, project manager[,] and supervisor at DFW." "As part of his current duties [at his new job], Nguyen plays the same supervisory and management role at [DFW] and performs essentially all of the same duties and functions as he performed [at DFW] while working for ABLe." ABLe further alleged that Nguyen also requested and received ABLe's confidential pricing and

11

vendor information from DFW and "was included and involved in most of the email communications amongst [E2's management] regarding [E2]'s and Nguyen's campaign to solicit and take ABLe's . . . employees that had worked under Nguyen" at DFW.

Based on these and similar allegations, ABLe asserted the following claims that Appellants challenged in their TCPA motions:

- Nguyen breached his fiduciary duty to ABLe by (i) disclosing ABLe's trade secrets to its direct competitors, (ii) soliciting its customers, and (iii) soliciting its employees to leave their employment;

- Nguyen committed fraud by nondisclosure by failing to disclose to ABLe material information "regarding the actions complained of herein," with the intent to induce ABLe "to not take further action to retain its employees, protect its trade secrets, retain its business relationships[,] and enforce the terms of its contracts";

- Through Nguyen's use and disclosure of ABLe's trade secrets to E2 and Southwest, Appellants committed misappropriation of trade secrets under the Texas Uniform Trade Secrets Act and committed civil theft by their theft of trade secrets;

- Appellants were parties to a civil conspiracy to breach Nguyen's fiduciary duties, steal and misappropriate ABLe's trade secrets, and tortiously interfere with ABLe's current and prospective business relationships;

- E2 and Southwest aided and abetted Nguyen by actively participating in his fraud, theft of trade secrets, breach of fiduciary duty, and tortious interference; and

- E2 and Southwest committed tortious interference with ABLe's current and prospective business relations—in particular, interference with Nguyen's contractual relationship with ABLe—by inducing and causing Nguyen to breach his agreements with ABLe.

12

ABLe also sought temporary and permanent injunctive relief prohibiting Appellants from (1) providing services to ABLe's customers that had been its customers during the last two years of Nguyen's employment at ABLe (which would have the effect of preventing E2 and Southwest from performing their obligations under the DFW contracts); (2) "soliciting ABLe's employees, independent contractors, or customers"; and (3) "disclosing ABLe's confidential and proprietary information to third parties."

DFW is a local governmental entity. *Dallas/Fort Worth Int'l Airport Bd. v. Vizant Techs., LLC*, 576 S.W.3d 362, 366 (Tex. 2019). Other than the fraud by nondisclosure claim against Nguyen, which we discuss more below, each of the challenged claims involved an allegation that Nguyen made communications about ABLe's work on the 2014 fiber contracts and its bids for the DFW contracts awarded to E2; about E2's bid for the 2018 contracts; about Nguyen's, E2's, and Southwest's potential and current work on those contracts; or about recruiting (hence communicating with) ABLe employees to work on those contracts. These communications were on an issue related to services in the marketplace and related to the government (DFW and its public bid process), and they involved concerns that have "public relevance beyond the pecuniary interests of the private parties involved." *Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, 591 S.W.3d 127, 136 (Tex. 2019).[6] Accordingly, these communications were at

---

[6]Appellants further argue that the communications regarding DFW were on matters related to environmental, economic, or community well-being, but we need not reach that argument. *See* Tex. R. App. P. 47.1.

least tangentially related to a matter of public concern, and, except for the fraud by nondisclosure claim against Nguyen, the TCPA applies to ABLe's challenged claims, which are based on, relate to, or are in response to these communications. Having held that the TCPA applies, we need not reach Appellants' argument that ABLe's claims are based on, relate to, or are in response to their exercise of the right to freedom of association. *See* Tex. R. App. P. 47.1.

### C. Nguyen's motion addressed ABLe's breach of fiduciary duty claim.

Before addressing the remainder of Appellants' issue, we consider ABLe's argument that Nguyen's TCPA motion failed to show the applicability of the TCPA to the breach of fiduciary duty and fraud by nondisclosure claims against him. Because we hold that the TCPA does not apply to the fraud by nondisclosure claim against Nguyen, we do not address ABLe's argument as to that claim.

With respect to the breach of fiduciary duty claim, as ABLe points out, Nguyen's motion contained no analysis on its own and instead adopted E2's motion for that purpose. ABLe argues that because it has not asserted the breach of fiduciary duty claim against E2, E2's motion did not address it, and therefore neither did Nguyen's. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(b) (providing that the moving party has the burden to show that the TCPA applies to the nonmovant's legal action).

However, ABLe asserted an aiding and abetting claim against E2 alleging that E2 knew about and *actively participated* in Nguyen's breaches of fiduciary duty. E2's motion argued that all the claims against it fell within application of the TCPA, and its

14

analysis addressed ABLe's aiding and abetting claim and the allegations supporting it. ABLe further alleged that E2 participated in a conspiracy with Nguyen to breach his fiduciary duty, and E2's motion addressed the applicability of the TCPA to that claim as well. E2's analysis discussed the TCPA's applicability to the alleged acts of all three defendants, including Nguyen, and Nguyen adopted this analysis in his dismissal motion. His motion therefore included by adoption an analysis of the TCPA's applicability as to the breach of fiduciary duty claim.

## III. The commercial speech exemption does not apply.

Returning to Appellants' issue, we next address their argument that ABLe failed to establish the applicability of the TCPA's commercial speech exemption. We agree with Appellants that the commercial speech exemption does not apply here.

By its terms, the TCPA does not apply to "a legal action brought against a person primarily engaged in the business of selling or leasing goods or services," if the statement or conduct on which the action is based "arises out of the sale or lease of goods, services, or an insurance product, insurance services, or a commercial transaction in which the intended audience is an actual or potential buyer or customer." *Id.* § 27.010(a)(2). The Supreme Court of Texas has construed this commercial speech exemption to exempt a legal action from the TCPA if, and only if, among other factors, "the statement or conduct at issue arose out of a commercial transaction involving the kind of goods or services [that] the defendant provides" and "the intended audience of the statement or conduct were actual or potential customers **of the defendant** for the

15

kind of goods or services the defendant provides." *Castleman v. Internet Money Ltd.*, 546 S.W.3d 684, 688 (Tex. 2018) (per curiam) (emphasis added).

Here, the intended audience of the alleged communications on which ABLe's causes of action are based—for example, Nguyen's alleged disclosure of ABLe's confidential information to E2 and Southwest and Nguyen's alleged solicitation of ABLe's employees—were not E2's and Southwest's customers. The intended audience was Nguyen, E2's management and employees, Southwest's management and employees, and ABLe's employees. Assuming for the moment the accuracy of the assertions in ABLe's live pleading, one must conclude that some of the communications were made in furtherance of a plan to secure DFW as E2's client, but DFW was not the intended audience of the communications.[7]

In its response to the TCPA motions, ABLe contended that Appellants had admitted that the intended audience of the conduct or communications were Appellants' actual or potential customers. ABLe points to Appellants' statements in

---

[7]ABLe further argued in the trial court and argues again on appeal that the commercial speech exemption applies to its claims "to the extent they are based upon Appellants' interference with [ABLe's] customer." ABLe cites *Abatecola v. 2 Savages Concrete Pumping*, LLC, No. 14-17-00678-CV, 2018 WL 3118601, at *9 (Tex. App.—Houston [14th Dist.] June 26, 2018, pet. denied) (mem. op.), for that proposition. But in *Abatecola*, the court of appeals held that—unlike here—the commercial speech exception applied because the intended audience of the defendant's statements was the defendant's actual or potential customers for the kind of goods or services the defendant provided. *See id.* In any case, we are bound to follow the Supreme Court's decision in *Castleman*.

16

their TCPA motions that "ABLe's claims concern [Appellants] working together on and communicating about cabling and fiber optics installation projects at DFW," that the communications involved a matter of public concern because they involved services in the market place and DFW's fiber optic systems, and that "ABLe filed this lawsuit alleging Nguyen's communications with Southwest and [E2] were for the common purpose of working on [E2's DFW] contracts." These assertions acknowledged that some of the alleged communications had some relation to Appellants' potential business with a customer, but they did not admit that the intended audience of Appellants' communications was DFW or any other actual or potential customer of Appellants.

Because ABLe did not establish that the commercial speech exemption applied, we sustain this part of Appellants' issue. *See id.* Having disposed of the parties' arguments relating to the applicability of the TCPA, we now turn to whether ABLe met its burden to avoid dismissal of the challenged claims.

## IV. With one exception, Appellants were entitled to dismissal of the challenged claims.

Because Appellants established that the TCPA applies, the burden shifted to ABLe to provide clear and specific evidence to make a prima facie case for each of its claims, meaning that ABLe had to "provide enough detail to show the factual basis" for each claim and enough evidence to support a rational inference that the factual allegation is true. *See Dallas Morning News, Inc. v. Hall*, 579 S.W.3d 370, 377 (Tex. 2019);

17

*Lipsky*, 460 S.W.3d at 591; *Bedford*, 520 S.W.3d at 904. The version of the TCPA applicable to this case directed the trial court to consider the pleadings and supporting and opposing affidavits stating the facts on which the liability is based. *See* Act of May 18, 2011, 82nd Leg., R.S., ch 341, H.B. 2973, § 2. (amended 2019) (current version at Tex. Civ. Prac. & Rem. Code Ann. § 27.006).

### A.     ABLe did not make a prima facie case for tortious interference.

To review the trial court's ruling on ABLe's tortious interference claims, we must first determine which Appellants were sued for tortious interference. In ABLe's first amended petition, it asserted that E2 and Southwest tortiously interfered with its contractual relationship with Nguyen and that all three Appellants tortiously interfered with the relations between ABLe and its at-will employees. After E2 argued in its TCPA motion that "Texas law does not recognize a claim for tortious interference with an existing contract involving only an at-will employment relationship," ABLe amended its petition to drop the claim that Appellants interfered with its relations with its at-will employees. The section of its live pleading setting out its tortious interference claims now alleges that E2 and Southwest tortiously interfered with ABLe's current and prospective business relations, "[i]n particular . . . ABLe's contractual relationship with Nguyen," "by inducing and causing Nguyen to breach his agreements with" ABLe. That section no longer mentions any tortious interference by Nguyen. However, as part of its aiding and abetting and conspiracy claims, ABLe pled that E2 and Southwest aided and abetted and conspired with Nguyen in *his* tortious interference with

18

unspecified current and prospective business relationships. It is unclear if ABLe mistakenly left this allegation in its pleadings after it dropped its tortious interference claim relating to the employee solicitations or if ABLe intended to plead a tortious interference claim against Nguyen. For the purposes of this opinion, we will assume that ABLe pled claims for (1) tortious interference with an (unidentified) existing contract by Nguyen; (2) tortious interference by E2 and Southwest with the Confidentiality Agreement and Noncompete between Nguyen and ABLe; (3) tortious interference with prospective business relations against all three Appellants; (4) E2 and Southwest's aiding and abetting in Nguyen's tortious interference with ABLe's existing contracts and prospective business relationships; and (5) a conspiracy among all three Appellants to tortiously interfere with ABLe's existing contracts and prospective business relationships.

Tortious interference with prospective business relations and tortious interference with a contract are similar causes of action but have distinct elements. *See Dobrott v. Jevin, Inc.*, No. 05-17-01472-CV, 2018 WL 6273411, at *5–6 (Tex. App.—Dallas Nov. 30, 2018, no pet.) (mem. op.). The elements of a claim for tortious interference with prospective business relations are (1) a reasonable probability that the plaintiff and a third party would have entered into a contractual relationship; (2) an independently tortious or wrongful act by the defendant prevented the relationship from occurring; (3) the defendant did the act with a conscious desire to prevent the relationship from occurring or knew that the interference was certain or substantially

19

certain to occur as a result of the conduct; and (4) the plaintiff incurred actual harm or damage as a result of the defendant's interference. *Astoria Indus. of Iowa, Inc. v. SNF, Inc.*, 223 S.W.3d 616, 632–33 (Tex. App.—Fort Worth 2007, pet. denied), *abrogated on other grounds by Dallas Symphony Ass'n, Inc. v. Reyes*, 571 S.W.3d 753 (Tex. 2019). On the other hand, tortious interference with a contract requires, as the term suggests, the existence of a contract. A plaintiff asserting this claim must prove "(1) the existence of a contract subject to interference; (2) willful and intentional interference; (3) interference that proximately caused damage; and (4) actual damage or loss." *Powell Indus., Inc. v. Allen*, 985 S.W.2d 455, 456 (Tex. 1998).

### 1. ABLe's evidence is insufficient to show tortious interference with prospective business relations.

To meet its burden under the TCPA to show a prima facie case for each essential element of its claims, ABLe relied on its second amended petition; its response to the TCPA motions; attached affidavits of Rick Lopez, and the exhibits attached to Lopez's affidavits.[8] *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.006. The only prospective business relations it mentions in its pleadings or TCPA response are the DFW contracts and potential business with Texas Christian University (TCU).

---

[8]We have reviewed Appellants' evidence as well. *See S & S Emergency Training Sols., Inc. v. Elliott*, 564 S.W.3d 843, 849 (Tex. 2018). While we found nothing that supports ABLe's claims, we occasionally reference evidence provided by Appellants to provide additional context.

As for the DFW contracts, ABLe pled that Nguyen assisted E2 and Southwest with E2's bids for the 2018 contracts and that it was "due to the concerted actions of Nguyen, [E2], and Southwest" that ABLe failed to win the DFW contracts for which it had also submitted bids. ABLe asserted in its TCPA response that if Nguyen had stayed at ABLe, it "was in the optimal position to win those bids" because of Nguyen's "unparalleled and substantial experience in managing, supervising[,] and discharging ABLe's services,"[9] "especially in light of Nguyen's relationship of trust and confidence with [ITS Infrastructure Project Specialist] Jay Harlow at DFW Airport." This assertion was repeated in Lopez's affidavit.

However, ABLe produced no evidence or factual details to explain why, given that DFW awarded the contracts based on a public bid, ABLe was in the optimal position to win them merely because Nguyen worked there and had good relationships with DFW ITS Infrastructure employees. The record shows that the Airport Board awarded the contracts, and nothing in the record indicates that the Airport Board based its award on anything other than the bids that it received. Further, while ABLe alleged that Nguyen "apparently" gave E2 confidential information to enable it to win the contracts, it did not provide details about what information Nguyen disclosed or how

_____

[9]ABLe also pled, however, that several months before Nguyen allegedly began helping E2 with its bids for the DFW fiber contracts, "it [had] bec[o]me apparent that Nguyen was unable to effectively and efficiently manage" the projects to which ABLe had assigned him.

that helped E2, rather than ABLe, win the contracts. It did not explain DFW's bidding process or criteria for awarding the contracts. Conclusory statements do not establish a prima facie case. *Dyke v. Hall*, No. 03-18-00457-CV, 2019 WL 5251139, at \*4 (Tex. App.—Austin Oct. 17, 2019, no pet.) (mem. op.); *Maldonado v. Franklin*, No. 04-18-00819-CV, 2019 WL 4739438, at \*8 (Tex. App.—San Antonio Sept. 30, 2019, no pet.) (mem. op.). Without providing details or evidence showing a reasonable probability that ABLe and DFW would have entered into a contractual relationship absent the alleged interference by Appellants, ABLe could not meet its burden with respect to the claim for tortious interference with prospective business relations.[10] *See Astoria Indus.*, 223 S.W.3d at 632–33; *see also Maldonado*, 2019 WL 4739438, at \*8.

Regarding its potential business with TCU, ABLe stated that "TCU recently approached ABLe to perform the day to day IT maintenance work at the University because their IT employee performing this work was retiring and they knew ABLe provides this type of service to other third parties," that TCU representatives also contacted E2 about the project, and that Nguyen met with TCU representatives on E2's behalf. Lopez made similar assertions in his affidavit, stating that "Nguyen is aware that TCU was a client of ABLe's while he worked for ABLe and continuing thereafter

---

[10]Regarding the A/V contract, E2 provided evidence that it was the lowest bidder and that ABLe was the third-lowest bidder, and ABLe does not explain how it could have won this contract over the second-lowest bidder absent interference by Appellants.

22

to this point in time." ABLe provided no details about what Nguyen said or discussed at that meeting and did not say what company TCU decided to contract with for the services. Further, ABLe provided no evidence that Nguyen was aware that TCU had also reached out to ABLe about the possibility of contracting with ABLe for these services.

ABLe's own evidence shows that it had not previously provided this type of service to TCU and that TCU had contacted multiple businesses about providing the services. This evidence is insufficient to show a reasonable probability that ABLe and TCU would have entered into a contractual relationship for the services had Appellants not interfered and is further insufficient to make a prima facie case that Nguyen had a conscious desire to prevent the relationship from occurring or knew that the interference was certain or substantially certain to occur as a result of his meeting with TCU. *See Lipsky*, 460 S.W.3d at 591.

ABLe further alleged that it had recently learned that Nguyen had been meeting with other customers of ABLe on E2's behalf. However, ABLe specified only one customer—TCU. The only evidence of potential business that ABLe has failed to secure is the DFW contracts, which we have already held cannot support a tortious interference with prospective business relations claim. In summary, ABLe failed to meet its burden to show through clear and specific evidence a reasonable probability that, without the alleged interference by Nguyen, E2, or Southwest, it and a third party would have entered into a contractual relationship. Accordingly, ABLe's claims against

23

Appellants for tortious interference with prospective business relations should be dismissed.

### 2. ABLe's evidence is insufficient to show tortious interference with existing contracts by Nguyen.

ABLe failed to make a prima facie case for a tortious interference with existing contracts claim against Nguyen. To begin with, ABLe cannot base this claim on Nguyen's own agreements with ABLe because a party cannot tortiously interfere with his own contracts. *In re Vesta Ins. Group, Inc.*, 192 S.W.3d 759, 761 (Tex. 2006). Thus, that claim, if ABLe alleged it, must be dismissed. Further, because conspiracy and aiding and abetting claims depend on the commission of an underlying tort, the aiding and abetting and conspiracy claims against E2 and Southwest, to the extent they are based on Nguyen's tortious interference with his own agreements, must also be dismissed. *See Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996); *Immobiliere Jeuness Establissement v. Amegy Bank Nat'l Ass'n*, 525 S.W.3d 875, 882 (Tex. App.—Houston [14th Dist.] 2017, no pet.).

Further, to the extent ABLe pled a tortious interference with contract claim against Nguyen for some other existing ABLe contract, it provided no factual details of what existing contract Nguyen interfered with. "A general statement that a contract with a customer exists, without details about the specific terms of the contract, is insufficient to maintain a tortious-interference-with-contract claim." *McDonald Oilfield Operations, LLC v. 3B Inspection, LLC*, 582 S.W.3d 732, 751 (Tex. App.—Houston [1st

Dist.] 2019, no pet.). ABLe pled that it had an existing relationship with TCU and that Nguyen met with TCU on behalf of E2, but this allegation does not support ABLe's tortious interference claim against Nguyen. ABLe had not previously provided this type of IT maintenance service to TCU and was not currently doing so when Nguyen met with TCU representatives. No evidence shows what information Nguyen provided to TCU at the meeting or that he attempted to interfere with any *existing* contract ABLe had with TCU. Because ABLe produced no evidence that Nguyen interfered with an existing contract, any claim against Nguyen for tortious interference with ABLe's existing contracts must be dismissed. *See Powell Indus.*, 985 S.W.2d at 456; *MVS Int'l Corp. v. Int'l Advert. Sols., LLC*, 545 S.W.3d 180, 199 (Tex. App.—El Paso 2017, no pet.) ("Because tortious interference requires proof of interference with a specific contract, we cannot credit some general loss of business as actionable."). Consequently, to the extent the aiding and abetting and conspiracy claims against E2 and Southwest are based on Nguyen's interference with other ABLe contracts, E2 and Southwest are therefore entitled to dismissal of those claims against them.

### 3. The Noncompete cannot support a tortious interference claim.

We now turn to ABLe's tortious interference claims against E2 and Southwest based on their alleged interference with Nguyen's performance of the Noncompete. We begin by addressing Appellants' argument that the Noncompete is overbroad and

25

therefore unenforceable as drafted.[11]  We start here because unenforceable covenants not to compete cannot form the basis of an action for tortious interference, and thus "unenforceability of a noncompetition covenant is a valid defense to a claim of tortious interference."  *Lazer Spot, Inc. v. Hiring Partners, Inc.*, 387 S.W.3d 40, 49 (Tex. App.—Texarkana 2012, pet. denied); *see also GE Betz Inc. v. Moffitt-Johnson*, 301 F. Supp. 3d 668, 698 (S.D. Tex. 2014), *aff'd in part sub nom. GE Betz, Inc. v. Moffitt-Johnston*, 885 F.3d 318 (5th Cir. 2018)  A covenant not to compete is a restraint of trade and is unenforceable as a matter of public policy unless it contains reasonable limitations as to the time, geographical area, and scope of activity to be restrained.  *U.S. Risk Ins. Grp., Inc. v. Woods*, 399 S.W.3d 295, 301 (Tex. App.—Dallas 2013, no pet.); *see also Heritage Operating, L.P. v. Rhine Bros., LLC*, No. 02-10-00474-CV, 2012 WL 2344864, at *4 (Tex. App.—Fort Worth June 21, 2012, no pet.) (mem. op. on reh'g).  "An industry-wide bar is unreasonable."  *U.S. Risk Ins. Grp.*, 399 S.W.3d at 301.  The enforceability of a covenant not to compete is a question of law.  *Cobb v. Caye Publ'g Grp., Inc.*, 322 S.W.3d 780, 783 (Tex. App.—Fort Worth 2010, no pet.).

---

[11]ABLe argues in its brief that Appellants are estopped from arguing that the Noncompete contains unreasonable restraints because E2 requires its employees to agree to the same restrictive covenants and E2 placed the same restrictive covenants in their agreement with Southwest.  ABLe cites no authority for this proposition and makes no legal analysis for the application of estoppel, and we therefore decline to consider this argument.  *See* Tex. R. App. P. 38.1.

Appellants attack the Noncompete on multiple grounds: it contains no geographical restriction; it restricts Nguyen from soliciting business from any ABLe customer with whom ABLe had a contractual relationship for the two years prior to Nguyen's last day, regardless of whether Nguyen had any contact with the customer at all; it restricts Nguyen from working for any ABLe competitor in any capacity for two years after he leaves ABLe; and it prohibits Nguyen from soliciting, within two years of his departure, any of ABLe's employees, independent contractors, consultants, vendors, or suppliers, without any limitation to those that interacted with Nguyen during his employment with ABLe.[12] We agree with Appellants that ABLe failed to make a prima facie case that the Noncompete is reasonable as drafted.

"Generally, a reasonable area for purposes of a covenant not to compete is considered to be the territory in which the employee worked while in the employment of his employer." *Id.* at 784. Appellants are correct that the Noncompete has no geographical limitation. *See Tranter, Inc. v. Liss*, No. 02-13-00167-CV, 2014 WL 1257278, at *5 (Tex. App.—Fort Worth Mar. 27, 2014, no pet.) (mem. op.) (holding that a

---

[12]ABLe asserted below that Nguyen had contact with every ABLe employee. But the Noncompete does not restrict him from contacting ABLe employees with whom he has had contact, and as such it restricts him from contacting even employees who start at ABLe after Nguyen left. Thus, while this kind of evidence might be relevant in reforming the Noncompete, depending on the kind of contacts Nguyen had with ABLe employees and what kind of restriction ABLe establishes as necessary for its protection, it is not relevant to whether the Noncompete, which contains no restriction to employees with whom Nguyen has had contacts, is overbroad as drafted. *See GE Betz*, 301 F. Supp. 3d at 687.

noncompetition clause was unenforceable as drafted because it had no geographical limitation). ABLe's TCPA response attempted to graft a geographical restriction onto the Noncompete by arguing that ABLe only does business in the Dallas/Fort Worth area. The Noncompete, however, contains no restriction to the Dallas/Fort Worth area or to the geographical areas in which ABLe does business. As drafted, it restricts Nguyen from being employed by *any* business that competes with ABLe, even if Nguyen works for that company outside of the Dallas/Fort Worth area, and from having any ownership interest in a business that services or distributes products or services similar to ABLe's, no matter where that business is located. ABLe argues in its brief that "Nguyen could harm ABLe's business by competing with ABLe no matter where in the world he is providing those services." However, the Noncompete does not, on its face, provide a basis for containing no geographical restriction, and ABLe provided no evidence to show that Nguyen working for a competitor in a geographical area in which ABLe does not do business, servicing clients in an area in which ABLe has no clients, could harm ABLe. Texas law mandates that a geographical limitation cannot impose a greater restraint than is necessary to protect the goodwill or other business interest of the employer. *Id.*

ABLe argued in the trial court that Nguyen was free to work for companies in the Dallas/Fort Worth area that, like ABLe, provide technology and information transport systems services so long as they do not "perform services on the type and size of commercial projects serviced by ABLe." The Noncompete, however, does not

28

contain this narrower definition of competition. Instead, the Noncompete contemplates that ABLe "may continue to grow and evolve and the range of services and the ways of providing services will continue to be enhanced and supplemented." That is, it contemplates that ABLe will continue to expand the types of services it provides, and as it does so, expand the range of business that could be considered its competition.

Courts have sometimes held that a noncompetition agreement is enforceable notwithstanding the lack of a geographical limitation if the agreement is limited to the employer's clients with whom the employee had dealings. *See Gallagher Healthcare Ins. Servs. v. Vogelsang*, 312 S.W.3d 640, 654 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). Even were we to apply that rule, ABLe failed to show that the Noncompete is reasonable. A noncompetition restriction is unreasonable "unless it bears some relation to the activities of the employee." *Wright v. Sport Supply Grp., Inc.*, 137 S.W.3d 289, 298 (Tex. App.—Beaumont 2004, no pet.). The Noncompete does not contain any restriction limiting Nguyen from soliciting or contacting only those ABLe customers, suppliers, or vendors with whom he had dealings. Instead, it restricts him from contacting or soliciting *any* ABLe supplier, vendor, or customer for two years after he leaves ABLe. Further, if ABLe had a contractual relationship with a company within two years of Nguyen's departure from ABLe, Nguyen cannot contact or solicit that company if his purpose in doing so is to enter into a business relationship related to the distribution or service of products and services that ABLe provided to the customer—

29

even if the customer is no longer an ABLe customer and was not an ABLe customer at the time of Nguyen's departure, even if Nguyen had no contact or dealings with that customer, and even if during Nguyen's time at ABLe, ABLe did not provide the kind of services to the client for which Nguyen seeks to solicit the customer after leaving ABLe.[13] This reading of the Noncompete is supported by the fact that ABLe has argued that Nguyen breached the Noncompete by meeting with TCU about providing services that ABLe had not previously provided to TCU.

ABLe failed to make a prima facie case that the Noncompete is reasonable and is enforceable as drafted. *See U.S. Risk Ins. Grp.*, 399 S.W.3d at 301; *see also Goodin v. Jolliff*, 257 S.W.3d 341, 351 (Tex. App.—Fort Worth 2008, no pet.) (holding that noncompetition provision was unreasonable because it contained no geographical limitation despite company's argument that the provision's restriction on working for the company's competitors amounted to a geographical restriction to those areas in which company did business). Accordingly, ABLe did not make a prima facie case for

---

[13]ABLe asserted that Nguyen had access to the contact information for all of its customers. ABLe produced no evidence that Nguyen actually accessed the contact information for every ABLe customer or that he took that information with him or that he had dealings with all of its customers. Further, while that information could be relevant to determining what restraint is reasonable and necessary for purposes of reforming the Noncompete, it does not aid in the initial determination of whether the Noncompete is overbroad; even assuming that ABLe could establish that its customer contact information was entitled to protection by a noncompetition agreement, the Noncompete does not limit Nguyen's soliciting of customers to those for whom he had contact information. *See GE Betz*, 301 F. Supp. 3d at 687.

a tortious interference claim based on the Noncompete against E2 and Southwest. *See Lazer Spot*, 387 S.W.3d at 49; *see also GE Betz*, 301 F. Supp. 3d at 698.

### 4. ABLe's evidence is insufficient to show interference with the Confidentiality Agreement.

The Confidentiality Agreement required Nguyen to "promptly return" upon his termination any documents containing confidential information and to not disclose or use ABLe's confidential information at any time during or after his employment there. As for ABLe's claim that E2 and Southwest interfered with Nguyen's Confidentiality Agreement, ABLe failed to provide evidence or enough factual detail to support that claim. Specifically, as we discuss below, ABLe failed to make a prima facie case that Nguyen had confidential information in his possession that he failed to return when he left or that he provided it to E2 or Southwest. As a result, ABLe failed to show that E2 or Southwest caused or induced Nguyen to breach the Confidentiality Agreement and failed to show that E2 and Southwest aided and abetted Nguyen and conspired with him to breach the Confidentiality Agreement.

In summary, ABLe failed to make a prima facie case with clear and specific evidence of tortious interference by Nguyen, E2, or Southwest. Accordingly, it also failed to establish that E2 and Southwest aided and abetted Nguyen in his tortious interference with ABLe's business relationships or that Nguyen, E2, and Southwest were parties to an unlawful conspiracy to tortiously interfere with ABLe's current and prospective business relationships. We sustain this part of Appellants' issue.

31

**B.     ABLe did not make a prima facie case for breach of fiduciary duty.**

ABLe pled a claim for breach of fiduciary duty against Nguyen based on his alleged solicitation of ABLe employees while he was still employed by ABLe, solicitation of ABLe customers while he was still employed by ABLe, and misappropriation of ABLe's trade secrets.  ABLe further pled that E2 and Southwest conspired with and aided and abetted Nguyen to breach his fiduciary duty.

**1.     ABLe did not produce evidence of solicitation of its employees.**

During Nguyen's employment at ABLe, he had a fiduciary duty to not solicit the departure of his coworkers.[14]  *See Abetter Trucking Co. v. Arizpe*, 113 S.W.3d 503, 512 (Tex. App.—Houston [1st Dist.] 2003, no pet.).   In the context of employer-employee relations, the commonly understood meaning of "solicit" is "to 'make petition to[,]' . . . ; 'to approach with a request or a plea[,]' . . . ; 'to move to action'; . . .

---

[14]Additionally, under the terms of the Noncompete as drafted, for two years after Nguyen left ABLe, he was prohibited from "induc[ing] or attempt[ing] to induce" ABLe employees to leave their employment.  *See Inducement*, Black's Law Dictionary (10th ed. 2014) (defining "inducement" as "[t]he act or process of enticing or persuading another person to take a certain course of action); *cf. Cerda v. RJL Entm't, Inc.*, 443 S.W.3d 221, 230 (Tex. App.—Corpus Christi–Edinburg 2013, pet. denied) (stating that the meaning of the word "induce" in common usage is to "move by persuasion or influence" or "to bring about by influence") (citation and internal quotation marks omitted); Restatement (Second) of Torts § 766 cmts. h & k (1979) (discussing inducement in the context of tortious interference with contract).  The claim against Nguyen for breach of the Noncompete is not before us, and we have held that E2 and Southwest are entitled to dismissal of the tortious interference claims against them that are based on Nguyen's alleged breach of that agreement.

[or] 'to endeavor to obtain by asking or pleading.'" *Eurecat US, Inc. v. Marklund*, 527 S.W.3d 367, 381 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (quoting *In re Athans*, 478 S.W.3d 128, 134–35 (Tex. App.—Houston [14th Dist.] 2015, orig. proceeding) and summarizing its discussion by stating that "the commonly understood meaning of 'solicit' includes more than merely to ask") (internal quotation marks omitted).

In ABLe's second amended petition, it asserted that by the time Nguyen left ABLe, he and E2 "had already actively solicited and recruited" seven ABLe employees to leave their employment to work for E2: Eddie Acosta (who ultimately stayed at ABLe), Damian Massey, Norman Norwood, Nick Norwood, James Shinn, Kevin Adcock, and Brandon Wright. ABLe further alleged that except for Acosta, each of those employees went to work for E2.

In ABLe's response to the TCPA motions, it asserted that

- E2 and Nguyen "aggressively solicit[ed] and recruit[ed] numerous ABLe employees that were, and had been, working on the fiber optics contracts under Nguyen's supervision and management at DFW Airport";

- In the two months after Nguyen started working with his new employer, "a large number of" ABLe's employees who had worked on the 2014 fiber contracts left ABLe "through secretive and notorious [sic] solicitation and recruitment by Nguyen and [E2]";

- Before Nguyen's last day at ABLe, he had solicited and recruited seven ABLe employees—the same employees ABLe named in its petition—and all but Eddie Acosta had begun working for E2 by February 2018; and

33

- Through initial discovery, Nguyen "admitted that . . . he ha[d] contacted[15] numerous ABLe employees."

In Lopez's affidavit, he stated that based on discovery, "it [was his] observation" that by March 2018, E2 and Nguyen "had solicited and hired approximately 10–15 ABLe employees" to work on E2's DFW contracts. Lopez attached exhibits to his affidavit, primarily copies of email exchanges among E2 employees and Nguyen.

These email exchanges show that Nguyen communicated with several people who worked for ABLe but who had taken steps to leave. Some of the emails provided with Lopez's affidavit show that in early January, before Nguyen left ABLe, E2's corporate recruiter communicated with some ABLe employees about applying at E2. However, Nguyen was not included or mentioned in these emails. Other emails show Nguyen being copied on emails about E2 recruitment or being asked questions about some of the job applicants, but all of those emails were sent after Nguyen had already left ABLe, and they show only communications that occurred after the employees were already in the process of seeking new employment away from ABLe. For example, after James Shinn had accepted employment with E2, E2 manager Don Carter emailed Nguyen to ask him to ask Shinn when Shinn would be submitting his notice to ABLe. Nguyen presumably did as Carter requested because he subsequently sent that information to Carter. Shinn also used Nguyen as an information conduit, requesting

---

[15]The Noncompete does not prohibit Nguyen from having any contact with ABLe employees.

that Nguyen ask Carter about when Shinn could start his new job. Another email chain shows Nguyen passing along similar information for Damian Massey.[16] Another email chain shows Massey telling Tammey Stockley, a recruiter with E2, that she would be receiving a resume from Norman Norwood, suggesting that in that case at least, Massey rather than Nguyen was communicating with a coworker about an opportunity to leave ABLe. These emails were all sent after Nguyen had left ABLe. This evidence makes clear that a number of ABLe employees wanted to leave their employment and that, after Nguyen left ABLe, he was willing to pass information back and forth between an ABLe employee and E2 representatives after the employee had applied at E2.

Other emails show Nguyen's willingness to give E2's representatives his opinion of the abilities of ABLe employees who had applied. For example, on February 21, Stockley emailed Nguyen stating that she had received a resume from John Thomas and asking if Nguyen had "[a]ny insight on him," to which Nguyen replied that Thomas "is a good AV technician." In another example, Nguyen sent an email to Carter in March 2018 in which he stated that the A/V contract needed "another ITS support"

---

[16]In his discovery responses, Nguyen denied that he had communicated with E2 or its representatives regarding ABLe employees Damian Massey, Earnest Nugent, James Shinn, Kevin Adcock, Jose Escobedo, Francisco Fernandez, and John Thomas, although he admitted that he communicates with these employees as part of his duties with Southwest. The emails produced by ABLe do not show that he gave E2 their names or that he communicated with E2 representatives about soliciting these employees. However, they do show that after some of the employees had already applied with E2, Nguyen participated in some communications about them.

and that he "believe[d] that there is a candidate available for this position and [had] contacted [Stockley]." The candidate in question was an ABLe employee. While it is unclear from the language of his email whether Nguyen was suggesting the person be recruited from ABLe or if the ABLe employee had already applied at E2 and Nguyen was merely giving him a recommendation, other documents in the record indicate that he had in fact already applied at E2. In any case, the email and application both occurred after Nguyen had left ABLe. These emails show only communications that occurred after the ABLe employees had already decided to seek employment away from ABLe and had applied at E2. None of the emails show that during his employment with ABLe, Nguyen took any action or made any communications attempting to petition or request ABLe employees to leave their employment.

Emails regarding three particular ABLe employees merit further discussion. Nguyen sent an email to Stockley stating that he could recommend the work of Jose Escobedo, who had sent his resume to Stockley. This email is more evidence that Nguyen was willing to act and did act as a go-between to communicate information between E2 representatives and ABLe employees who had applied at E2, but, like the other emails relied on by ABLe, only after the employee had already taken steps to find different employment. It does not show Nguyen breaching his fiduciary duty by soliciting Escobedo.

Closer—but still inadequate—evidence of solicitation is an email from Mike Ruggieri with his resume attached; Ruggieri asked the recipient of the email to forward

36

his resume to "Robert and Jeff," whose email addresses he had (mistakenly, it seems) thought were "on the website." While the "to" and "from" fields are missing from the email chain, context suggests that this email was sent to Nguyen's personal email address, either as the recipient of Ruggieri's email or forwarded to him by someone else. Context further suggests that Nguyen forwarded a copy of this email to E2 employee Chelsey White (although, again, the "to" and "from" fields are not included in this email), who in turn forwarded it to Carter. While the email chain does not make clear the identity of the men Ruggieri was attempting to send his resume to, the "Robert" referenced could refer to Nguyen's supervisor at Southwest, Robert Hernandez. Nguyen admitted in discovery responses that Ruggieri called him at some point to ask if Southwest was hiring. Reading this email chain together with Nguyen's discovery response suggests that Nguyen answered yes to Ruggieri's question and that Ruggieri then asked Nguyen to forward his email to Nguyen's supervisor after Ruggieri failed to find contact information for Southwest's representatives on Southwest's website. It does not, however, help make a prima facie case that Nguyen solicited Ruggieri or other employees to leave ABLe. It suggests that Nguyen answered honestly to a question from his former coworker about his current employer and that he was willing to pass along application information if requested to do so. It does not show Nguyen persuading or influencing Ruggieri to leave ABLe while Nguyen was still employed by ABLe.

37

Finally, ABLe relied on the affidavit of Eddie Acosta, the ABLe employee who interviewed with E2 but decided not to leave ABLe. In his affidavit, Acosta stated that in February 2018, an E2 representative called him and told him that Nguyen had recommended him for a job and had given the representative Acosta's contact information. He stated that prior to that phone call, he had not provided his personal contact information to an employee or representative of E2.

However, Acosta's affidavit is flatly contradicted by ABLe's other evidence. ABLe's own pleading contradicts the timeline in Acosta's affidavit; ABLe pled that E2 and Nguyen "had already actively solicited and recruited" ABLe employees, including Acosta, before Nguyen began working for Southwest on January 15, 2018. As for Acosta's assertion that E2 called him using contact information provided by Nguyen, this statement too is contradicted by evidence that ABLe produced. ABLe included a January 8, 2018, email that Stockley sent Acosta regarding his resume that Acosta himself had posted on Indeed.com. In the body of the email, Stockley stated that she "would love to connect with [Acosta] regarding several AV positions we have open," and she asked Acosta to "email or call [her] to express [his] interest or lack of interest." Acosta replied to express his interest in the job, and the next day, Stockley sent him an email asking to set up a phone interview that week. Then, on February 7, 2018, Acosta emailed Stockley saying that he was contacting her "in regards to the job offer that we had talked about a while back." Acosta stated, "I talked to Don [Carter] about 2 weeks ago and I haven't heard anything back. I was just curious if the job offer

38

is still available." Thus, ABLe's evidence shows that Stockley contacted Acosta through Indeed.com, where his resume was publicly posted, in January 2018; Acosta responded within a day that he was interested in a job with E2; Stockley set up a phone interview with Carter; the interview occurred, and Acosta was offered a job; and in early February 2018, Acosta asked Stockley if the job offer was still open. Thus, the information in Acosta's emails with Stockley from that time period—ABLe's own evidence—refutes the factual claims in Acosta's later-executed affidavit. Further, beyond the evidence conflicting with Acosta's affidavit, it cannot support a claim for breach of fiduciary duty because its own timeline of facts does not show an attempt at soliciting him before Nguyen left ABLe. According to ABLe, Nguyen's last day was before January 15, 2018, Acosta's affidavit stated that he was contacted in early February 2018, and no facts in the affidavit indicate that the recruiter had received his contact information before the date of Nguyen's departure from ABLe.

ABLe further asserted in its TCPA response that "Nguyen was even interviewing the potential new hires being solicited from ABLe on behalf of E2." However, the document it cited to support that assertion was an email showing that on his first day at Southwest, Nguyen was scheduled to participate in a group interview, along with Carter and another E2 employee, of a candidate who was then employed by Anistar, not ABLe. That email discussed the status of other potential employees and stated that Stockley was in the process of setting up interviews with them, but it does not show Nguyen set out to interview anyone else. Further, an E2 division manager replied to

39

that email with a note that the employee Nguyen was set to interview had actually already started with E2 that same day. From other emails relied on by ABLe, candidate interviews were generally conducted by Carter.

In summary, while ABLe asserted in its pleading that Nguyen solicited and recruited ABLe employees, and Lopez made the same assertion in his affidavit, ABLe's own evidence showed that E2 employees contacted ABLe employees, arranged for and conducted interviews, and sent them offer letters and new hire information. ABLe's evidence does not show how E2 came by the contact information for all of the recruited employees, but it does show that for at least several of the employees, Nguyen was not the source of that information.[17] The evidence does not show that Nguyen talked to ABLe's employees about employment with E2 or Southwest—or anywhere else— before they had already taken steps on their own to find other employment. The evidence does not show that Nguyen persuaded, influenced, enticed, moved, or caused ABLe's employees to leave their employment, and no evidence shows that he communicated with them about leaving their jobs while he was still at ABLe. Thus, ABLe failed to make a prima facie case based on clear and specific evidence that Nguyen breached his fiduciary duty to ABLe by soliciting ABLe employees. Further, because

---

[17]With E2's TCPA motion, it provided Stockley's affidavit, in which she stated that she contacted the ABLe employees with information that she learned from recruiting sites like Indeed.com and from LinkedIn, a career-oriented social network site.

ABLe's evidence does not make a prima facie case that Nguyen solicited ABLe employees during his employment with ABLe, ABLe also did not make a prima facie case that Nguyen, E2, and Southwest conspired to solicit ABLe employees in breach of Nguyen's fiduciary duty or that E2 and Southwest aided and abetted Nguyen's soliciting of ABLe employees in violation of his fiduciary duty. We sustain this part of Appellants' issue.

### 2. ABLe did not make a prima facie case for breach of fiduciary duty based on soliciting of its customers.

ABLe's claim for breach of fiduciary duty based on Nguyen's alleged solicitation of ABLe customers also must be dismissed. DFW is the only customer ABLe named as being solicited by Nguyen, directly or indirectly, while he was still at ABLe. But ABLe's evidence on this point fails for the same reason it fails with respect to its tortious interference claim. ABLe produced no factual details or evidence that Nguyen solicited DFW to award the contract to E2, and it named no other customer that Nguyen solicited while still at ABLe. The only other customer that ABLe named as being solicited by Nguyen was TCU, but ABLe produced no factual detail or evidence indicating that any solicitation of TCU occurred while Nguyen was still at ABLe. To the contrary, Lopez's January 2019 affidavit implied that the meeting had occurred not long before he executed the affidavit. Accordingly, that allegation cannot support a claim for breach of fiduciary duty. We sustain this part of Appellants' issue.

41

### 3. ABLe did not make a prima facie case for breach of fiduciary duty by misappropriation of trade secrets

ABLe alleged that Nguyen also breached his fiduciary duty by misappropriating its trade secrets. Even if this claim survives the preemption provision of the Texas Uniform Trade Secrets Act (TUTSA), *see* Tex. Civ. Prac. & Rem. Code Ann. § 134A.007(a) (providing that the act "displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret"); *Super Starr Int'l, LLC v. Fresh Tex Produce, LLC*, 531 S.W.3d 829, 843 (Tex. App.—Corpus Christi–Edinburg 2017, no pet.),[18] ABLe failed to produce factual details or evidence that Nguyen misappropriated a trade secret belonging to ABLe, as we discuss next. We sustain this part of Appellants' issue.

### C. ABLe did not make a prima facie case for its claims based on the misappropriation of trade secrets

In ABLe's second amended petition, it alleged that Nguyen used or disclosed ABLe's trade secrets to E2 and Southwest in violation of the Noncompete and that "Nguyen, [E2,] and Southwest have used these trade secrets in an effort to conduct business directly with [ABLe's] customers or prospective customers." In addition to

---

[18] *But see Neurodiagnostic Consultants, LLC v. Nallia*, No. 03-18-00609-CV, 2019 WL 4231232, at *10 (Tex. App.—Austin Sept. 6, 2019, no pet.) (mem. op.) (holding, with no discussion of preemption, that because the plaintiff's claim for breach of fiduciary duty overlapped factually with its claim for misappropriation of trade secrets, for which the plaintiff had made a prima facie case under the TCPA, the plaintiff had also made a prima facie case for breach of fiduciary duty)

suing Appellants for misappropriation of trade secrets, ABLe asserted conspiracy and aiding and abetting claims against E2 and Southwest based on the allegation that they assisted Nguyen in his misappropriation of its trade secrets.

Under TUTSA, information qualifies as a "trade secret" if it meets two requirements: (1) "the owner of the trade secret has taken reasonable measures under the circumstances to keep the information secret" and (2) "the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." Tex. Civ. Prac. & Rem. Code Ann. § 134A.002(6).

In its second amended petition and its TCPA response, ABLe discussed various categories of information to which Nguyen had access while at ABLe and which it considered to be confidential information and trade secrets. In describing the trade secrets allegedly misappropriated by Nguyen, ABLe referenced four categories of trade secrets. First, ABLe referenced information relevant to the DFW contracts, stating that "Nguyen has apparently provided confidential information to his new employers to enable them to win" and then service the DFW fiber contracts.[19] ABLe made this allegation in its second amended petition and in its TCPA response. ABLe did not,

---

[19]ABLe asserts that "historically," ABLe won these contracts. From the record, this statement is technically true in the sense that ABLe had been the successful bidder for those contracts on one previous occasion.

however, identify any particular information that Nguyen "apparently" provided to help E2 win the fiber contracts and alleged no details and provided no evidence from which Nguyen's providing ABLe's trade secrets would be a rational inference. *See Hall*, 579 S.W.3d at 377. However, we assume ABLe was referring to the "proprietary pricing information, special vendor relationships, and strategies and financial information" that it alleged Nguyen had access to while at ABLe. Nevertheless, ABLe provided no factual details or evidence to support an assertion that Nguyen gave this information to E2 or Southwest to use in submitting the bids for the 2018 contracts or that they used such information. ABLe therefore failed to make a prima facie case based on clear and specific evidence that Appellants misappropriated this information. *See Lipsky*, 460 S.W.3d at 591.

Next, ABLe asserted that Nguyen has provided E2 and Southwest with ABLe employee names and contact information, their certifications and training, and their previous experience and examples of their work.[20] Lopez's affidavit contained the conclusory assertion that "[t]his information is not readily ascertainable by our

---

[20]At several points in its pleading and TCPA response, ABLe notes that it had trained Nguyen and provided him with experience in the field. To the extent these assertions constitute an allegation that Nguyen misappropriated the training, education, and experience he gained while working at ABLe, it does not explain how this qualifies as ABLe's trade secret. *See Glob. Supply Chain Sols., LLC v. Riverwood Sols., Inc.*, No. 05-18-00188-CV, 2019 WL 3852661, at *16 (Tex. App.—Dallas Aug. 16, 2019, no pet.) (mem. op.). As we noted elsewhere, E2 produced evidence that the work at DFW requires knowledge and experience general to the field.

44

competitors." However, ABLe offered no evidence or details to explain how its employees' work experience and credentials and their own names and contact information is information that is not generally known or readily ascertainable through proper means. *See* Tex. Civ. Prac. & Rem. Code Ann. § 134A.002(6)(B); *Downing v. Burns*, 348 S.W.3d 415, 423 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (noting information generally known in the industry is not eligible for trade-secret protection); *see also GE Betz*, 301 F. Supp. 3d at 697 ("Plaintiff does not explain how [its former employee's] knowledge of [other employees'] capabilities was confidential information."). The Confidentiality Agreement does not list employee's own information as an ABLe trade secret, and ABLe presented no evidence that it prohibits ABLe employees from posting information on LinkedIn or requires them to keep secret information about their own credentials. ABLe's own evidence shows that for at least one employee, his name, contact information, and resume were posted on a job website. ABLe also provided no evidence that the information derives independent economic value from being not generally known or readily ascertainable.[21] *See* Tex. Civ. Prac. &

---

[21]ABLe asserted that without the ABLe employees that E2 recruited, E2 "would not have been able to fulfill the requirements of their contracts with DFW Airport." However, ABLe provides no evidence or facts to indicate how it has knowledge of E2's capabilities to fulfill the 2018 contracts.

Rem. Code Ann. § 134A.002(6). ABLe failed to make a prima facie case based on clear

and specific evidence that this information is its trade secret.[22]

The third category of information ABLe claimed as a trade secret was

information related to Nguyen's work experience: Nguyen's working knowledge of

DFW[23] and his professional goodwill. Regarding a "working knowledge" of DFW,

---

[22]Even if it were, ABLe asserted no facts and produced no evidence to support its allegation that Nguyen provided this information to E2 other than Acosta's affidavit, which we have already addressed.

[23]To the extent that ABLe contended that Nguyen could not have performed work at DFW without using ABLe's trade secrets, E2's president and CEO stated in her affidavit that "[t]he installation processes/procedures for each type of cabling and related materials are established by the manufacturers of those materials, who offer and make generally available the same training and certifications industry-wide, including to E2 and its personnel." She further stated that "the industry standards for low-voltage cabling and related installation practices are set forth by BICSI, an association which establishes professional standards and drafts and provides technical manuals for the low voltage, cabling, and related industries" and that "BISCI also provides a wealth of publicly available information related to the installation of fiber optic and other systems." Furthermore, Carter stated in his affidavit that the 2018 fiber contracts "are for standard structured cabling and fiber optic installation and related services" and that "[t]his work is similar to numerous other projects on which [he has] worked, including prior projects at DFW. E2 has also performed this type of work nationwide for a variety of public and private customers." He further stated that he supervises Nguyen's work as a subcontractor and that Nguyen performs "essentially a project manager" function for Southwest, a role in which he "performs the same tasks as would be expected from any project manager, which requires some use of general industry knowledge and experience but which does not require [him] to use or employ any confidential information or trade secrets of ABLe." ABLe, on the other hand, provided no evidence or factual details to support a claim that Nguyen's current work at DFW requires the use of ABLe's trade secrets. *Contra Morgan v. Clements Fluids S. Tex., LTD.*, 589 S.W.3d 177, 187, 188 (Tex. App.—Tyler 2018, no pet.) (holding that the plaintiff had met its burden under the TCPA to make a prima facie case of misappropriation of trade secrets when the plaintiff produced evidence that it had trade secrets related to a highly specialized system in the oil and gas market; that shortly after two of plaintiff's former

46

ABLe does not provide more details to explain what kind of knowledge it refers to or how this knowledge—information that presumably DFW employee's and employees of other companies also learn by working at DFW—is information that qualifies as ABLe's trade secret under TUTSA. *See Glob. Supply Chain Sols.*, 2019 WL 3852661, at *16 ("[N]either TUTSA nor common law prohibits the use of general knowledge, skill, and experience a person acquired during employment."); *cf. T-N-T Motorsports, Inc. v. Hennessey Motorsports, Inc.*, 965 S.W.2d 18, 22 (Tex. App.—Houston [1st Dist.] 1998, pet. dism'd) (holding that employee's duties toward employer do not bar the use of general knowledge, skill, and experience after termination of employment).

As for goodwill, this term "is generally understood to mean the advantages that accrue to a business on account of its name, location, reputation[,] and success." *Orbison v. Ma-Tex Rope Co., Inc.*, 553 S.W.3d 17, 29 (Tex. App.—Texarkana 2018, pet. denied) (quoting *Taormina v. Culicchia*, 355 S.W.2d 569, 574 (Tex. App.—El Paso 1962, writ ref'd n.r.e.)). Goodwill is intangible property that may be used to attract and retain customers, and under Texas law a company may protect goodwill through covenants not to compete. *See* Tex. Bus. & Com. Code Ann. § 15.50(a). However, ABLe did not explain how Nguyen's goodwill is its trade secret, even assuming that goodwill, which

employees began working for the defendant, it began performing that kind of specialized work, even though it had never performed that kind of specialized work before; and that the competitor performed a job using that system for one of plaintiff's customers).

is not information, can be a trade secret.  It also did not provide details to explain how its own goodwill with DFW and other clients based on Nguyen's work for those clients qualifies under TUTSA as a trade secret.  ABLe also failed to explain how Nguyen either acquired the goodwill through improper means or disclosed it without consent.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 134A.002(3) (defining misappropriation).  Further, there is no evidence that either ABLe's or Nguyen's goodwill had anything do with E2 winning the contracts at DFW or with E2 or Southwest winning any other business.  C*f. Marsh USA Inc. v. Cook*, 354 S.W.3d 764, 784–85 (Tex. 2011) (Willet, J., concurring) (stating that "[e]very company has customer relationships and attendant goodwill it wants to cultivate by incentivizing employees to stay, but merely *asserting* goodwill is not enough" for a company to prove the reasonableness and necessity of a noncompete agreement protecting its goodwill, and instead "[t]he evidentiary record must demonstrate special circumstances beyond the bruises of ordinary competition such that, absent the covenant, [the employee] would possess a grossly unfair competitive advantage").  While ABLe asserted that E2 is reaping the benefit of Nguyen's goodwill with Harlow[24] and other decisionmakers at DFW, it does not provide any facts to

---

[24]Although Lopez asserted in his affidavit that while working at ABLe, "Nguyen became the primary (and practically exclusive) point of contact between ABLe and the DFW Airport ITS Infrastructure team," most of the emails in the record from Harlow to Nguyen during the latter's time at ABLe were sent to both Nguyen and Byron Eldredge; a document in the record indicates that in 2013, Eldredge was an ABLe director.  The record does not indicate if Eldredge left ABLe at some point or, if he did, where he went to work after ABLe.

support the conclusion that Harlow was a decisionmaker with input on contract awards, and it does not explain how any goodwill Nguyen may have with Harlow or others affected the Airport Board's decision to award the contracts to E2 when the contracts were based on a public bid process. Simply put, there is no evidence that Nguyen and ABLe's goodwill is a trade secret or that Nguyen, E2, or Southwest improperly acquired or used that goodwill to win either the 2018 contracts or any other business.

Finally,[25] ABLe also asserted that Nguyen had been requesting and receiving ABLe's confidential information from DFW employees, "including an ABLe delivery order template that contained a sample of the unit pricing used in ABLe's bid proposals of December 2017" and which "contained ABLe's pricing, its vendor, and the pricing ABLe received from its vendor." The delivery order template is the only confidential information that ABLe specifically identified as having been requested from DFW by Nguyen.

---

[25]ABLe alleged that during his employment, Nguyen had access to data about ABLe's financial performance and to "details of all of ABLe's ongoing contracts and project[s]," and Nguyen admitted to part of this allegation in discovery; specifically, he admitted that prior to executing the Noncompete in May 2017, he had received financial information for ABLe, including information related to ABLe's profits. However, he denied having received training regarding ABLe's pricing during his employment there, and there is no evidence that Nguyen took any information with him when he left ABLe or that he provided it to E2 or Southwest before he left.

To support its allegation, ABLe pointed to two forwarded emails,[26] which it attached to its TCPA response. The first email was a forward of an email chain, which began with an email sent on December 27, 2017, from DFW's Harlow to Nguyen at ABLe; Harlow requested a delivery order for specific work under the 2014 fiber contracts. In his response, Nguyen referenced an attached delivery order proposal. Then, in February 2018—after Nguyen had left ABLe and had begun working at Southwest—Byron Eldredge[27] forwarded that email chain to Nguyen at his old ABLe email address, with an attached delivery order proposal providing ABLe's quote for performing work under one of the 2014 fiber contracts. In the body of the email, Eldredge asks, "Something like this?" There is no other text. That delivery proposal template includes language at the bottom of each page indicating that the document is

---

[26]ABLe's TCPA response contains one other forwarded email chain, this one from Harlow to Nguyen after Nguyen had left ABLe. In the first email in that thread, dated February 12, 2014, Harlow had asked Nguyen, then still at ABLe, to provide him a quote, and Nguyen responded. There were several other emails in the chain discussing a revised quote. Then, on April 12, 2018, Harlow forwarded that email chain to Nguyen at Nguyen's E2 contractor email address. The body of the text said only, "FYI." If the email contained an attachment, it is not in the record, and it thus does not show that Nguyen received ABLe's confidential information from DFW. As with the emails forwarded by Eldredge, this forwarded email does not indicate whether Harlow sent the email at Nguyen's request or for some other reason.

[27]While the record indicates that, at one time, Eldredge was an ABLe director, it does not indicate whether Eldredge was still at ABLe when he forwarded this email chain to Nguyen. If Eldredge was still an ABLe director at that time, ABLe did not explain how an ABLe director's sending the information to Nguyen constituted misappropriation by Nguyen.

ABLe's "confidential and proprietary information." However, there is no evidence of what, if anything, Nguyen did with the information in the attached document.

Next, in February 2018, Harlow sent Nguyen an email to his old ABLe email address with the subject line, "Quote for CHQ." In the body of the email, Harlow says only "FYI." The email contains no indication that it includes an attachment, but the next page of the record is a 2014 delivery order proposal from ABLe for "Backbone cabling for Headquarters Building." This delivery order proposal appears to be the document referred to by ABLe in its TCPA response as having been submitted with its December 2017 bids as sample pricing, although it states that it is based on an email request received from Harlow on June 10, 2014. The attachment has "confidential and proprietary information" at the bottom of the page. However, as with the other email, it contains no indication that it was sent in response to a request from Nguyen and does not show any disclosure by Nguyen of the pricing information or other information contained in the emails.

For several reasons, these emails are not sufficient to support ABLe's claim that Nguyen was improperly procuring and using or disclosing ABLe's confidential information. While they are certainly suspicious, when the emails' text includes only Eldredge's statement of "Something like this?" and Harlow's statement of "FYI," we can merely speculate about what prompted Harlow or Eldredge to send the emails to Nguyen. There is no evidence that Harlow or Eldredge sent the emails at Nguyen's request rather than sending them at his own instigation for his own reasons. There is

51

no evidence, such as delivery order proposals submitted by E2 using information or pricing copied from ABLe's documents, that show any use of the information in the emails. Further, ABLe originally sent the delivery order proposal to DFW, a public entity subject to laws about public disclosure of information, and ABLe provides no factual details to explain how the information in the emails was not readily ascertainable through proper means under that circumstance.[28] Finally, the email is also not evidence that Nguyen used or disclosed any of the information in the delivery order proposal, and nothing in ABLe's petition, TCPA response, or attached evidence provides factual support for an allegation that he did so.[29] There is no evidence or factual detail of what

---

[28] The 2014 fiber contracts stated that regarding confidential information provided in the bid for the contracts, DFW would not disclose the information without reviewing it and possibly seeking an Attorney General opinion. However, the contracts expressly stated that DFW did not guarantee that it would not disclose the information, and the contracts make no representations about disclosure of information provided in response to a delivery order proposal. Further, though not determinative of the issue, we point out that while the trial court signed a protective order allowing for the parties to file documents under seal, when ABLe filed its response to the TCPA motions, it does not appear that it filed it under seal, and no sealing order appears in the record. Consequently, the information in the record, including the information ABLe claims as confidential, is technically available to the general public. *See* Tex. R. Civ. P. 76a; Tex. Civ. Prac. & Rem. Code Ann. § 134A.006(a). While we note that the law "condemn[s] the employment of improper means to procure trade secrets," and thus the question in a misappropriation case is how the defendant actually secured the information and not how the defendant *could have* secured it, *Sharma v. Vinmar Int'l., Ltd.*, 231 S.W.3d 405, 424 (Tex. App.—Houston [14th Dist.] 2007, no pet.), ABLe's evidence falls short of making a prima facie case that Nguyen acquired ABLe's trade secrets by improper means.

[29] In his declaration attached to E2's TCPA motion, Nguyen stated that he had never shared or disclosed any information concerning ABLe's mark-ups, labor rates, profits or profit margins, or pricing or other financial information. In her affidavit,

52

Nguyen did with that information, if anything. In sum, the emails provide suspicion but insufficient evidence to make a prima facie case based on clear and specific evidence that Nguyen misappropriated ABLe's trade secrets. *See Schofield v. Gerda*, No. 02-15-00326-CV, 2017 WL 2180708, at *15 n.14 (Tex. App.—Fort Worth May 18, 2017, no pet.) (mem. op.) (stating that the "clear and specific evidence" language in the statute requires plaintiffs to meet their burden "not with general, debatable evidence, but with evidence that provided explicit proof as to the particular fact at issue").

ABLe's TCPA response could be read as further asserting that Nguyen misappropriated not just the pricing information contained in the delivery order proposals but also the "special-purpose and proprietary project and business-related forms and templates" used for the delivery order proposals. However, ABLe provides no factual details or evidence to support this assertion. There is no evidence that Appellants copied these forms or used them to submit delivery order proposals to DFW or to anyone else, and, as we have said, the evidence is insufficient to make a prima facie case that Nguyen requested that the forms be sent to him.

---

E2's president and CEO stated that prior to submitting bids for the DFW contracts, E2 already had existing relationships with all the major cable manufacturers and distributors for the materials used for its DFW work. E2's Don Carter stated in his affidavit that he has sole approval authority over and specifically reviews and authorizes all work orders for E2's work at DFW, and he has never used ABLe's pricing, scheduling, or other operational information in doing so. ABLe did not produce any evidence or factual details contradicting these statements.

ABLe failed to meet its burden to show that Nguyen misappropriated confidential information in the emails and attachments. Because ABLe did not meet its burden on its claims for misappropriation of trade secrets, the trial court should have dismissed the challenged claims based on misappropriation.[30]

## D.    ABLe's fraud by nondisclosure claim

ABLe alleged that Nguyen failed to disclose certain communications he made to E2, Southwest, ABLe employees, and ABLe customers—specifically, that he failed to disclose his misappropriation of trade secrets by disclosure and his solicitation of ABLe employees and customers. While we have held that ABLe failed to make a prima facie case that Nguyen misappropriated trade secrets or solicited ABLe customers or employees, the trial court correctly declined to dismiss the fraud by nondisclosure claim against Nguyen because the TCPA is inapplicable to it.

Communications are the factual genesis of this claim in that ABLe sued Nguyen for making specific communications to E2, Southwest, ABLe employees, and ABLe customers and then failing to disclose those communications, but these

---

[30] As noted above, because Nguyen did not move to dismiss the breach of contract claims against him, we do not consider whether any evidence supports ABLe's claim that Nguyen breached the Confidentiality Agreement and the Noncompete. However, we do consider the claims against E2 and Southwest that are based on Nguyen's alleged breach of contract, including the claims that E2 and Southwest aided and abetted Nguyen and conspired with him to misappropriate ABLe's trade secrets in breach of his agreements. ABLe failed to meet its burden as to these claims because it failed to produce clear and specific evidence that Nguyen misappropriated its trade secrets.

communications are not the basis of the fraud by nondisclosure claim.[31]  A fraud by

nondisclosure claim turns not on the making of a communication but on the failure to

make one.  *See Jang Won Cho v. Kun Sik Kim*, 572 S.W.3d 783, 801 (Tex. App.—Houston

[14th Dist.] 2019, no pet.).  As such, this court and other courts of appeals have held

that the TCPA does not apply to a claim for failure to disclose information because the

claim is not based on, related to, or in response to the making or submitting of a

statement or document.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.001(1) (defining

"communication" under the TCPA as the marking or submitting of a statement or

document); *Ray v. Fikes*, No. 02-19-00232-CV, 2019 WL 6606170, at *3 (Tex. App.—

Fort Worth Dec. 5, 2019, pet. denied) (mem. op.) (stating that the definition of

"communication" in the TCPA does not include the failure to communicate, and thus

plaintiff's claims against her former attorney for failing to file a claim within the

limitations period did not fall within the TCPA); *Shields v. Shields*, No. 05-18-01539-CV,

2019 WL 4071997, at *7 n.10 (Tex. App.—Dallas Aug. 29, 2019, pet. denied); *see also*

*Pacheco v. Rodriguez*, No. 08-19-00129-CV, 2020 WL 57884, at *6 (Tex. App.—El Paso

---

[31] Admittedly, ABLe's pleading of this claim does assert facts related to a communication by Nguyen; ABLe alleged that in a January 8, 2018 meeting between Nguyen and ABLe principals, Nguyen misrepresented what his employment plans were after leaving ABLe.  More specifically, ABLe alleged that Nguyen explicitly told ABLe principals that in his future work for Southwest, he would not be performing services at DFW.  But the crux of ABLe's fraud by nondisclosure claim is not this alleged misrepresentation; ABLe's claim is not that Nguyen induced ABLe to take some detrimental action by making misrepresentations but that his withholding of the truth caused it to refrain from taking actions it otherwise would have.

Jan. 6, 2020, no pet.); *Krasnicki v. Tactical Entm't, LLC*, 583 S.W.3d 279, 284 (Tex. App.—

Dallas 2019, pet. denied).[32] ABLe alleged that Nguyen had been disclosing information

to E2 and Southwest and soliciting ABLe's customers and employees, all of which

ABLe claimed were prohibited by Nguyen's fiduciary duty and the Noncompete, and

that Nguyen failed to disclose these communications to ABLe's principals despite

having the obligation and opportunity to do so. Regardless of whether ABLe provided

factual details or evidence to support these allegations, it alleged the lack of a

communication rather than the making of one. *See Hersh v. Tatum*, 526 S.W.3d 462,

467 (Tex. 2017) (stating that the basis of a legal action is determined by the plaintiff's

allegations). Accordingly, the trial court correctly denied Nguyen's TCPA motion as to

the fraud by nondisclosure claim against him. We overrule this part of Appellants' issue.

---

[32]The Austin court of appeals has rejected the premise that the TCPA never applies to a claim based on the failure to communicate. In two cases, that court held that when a plaintiff sues a defendant for making a communication that omits certain information, the claim may be subject to the TCPA. *Woodhull Ventures 2015, L.P. v. Megatel Homes III, LLC*, No. 03-18-00504-CV, 2019 WL 3310509, at *3 (Tex. App.— Austin July 24, 2019, no pet.) (mem. op.); *Mustafa v. Pennington*, No. 03-18-00081-CV, 2019 WL 1782993, at *3 (Tex. App.—Austin Apr. 24, 2019, no pet.) (mem. op.). Even in those cases, however, the plaintiff's claim was premised on the existence of a communication—one that omitted the information that the plaintiff believed should have been disclosed. *See Mustafa*, 2019 WL 1782993, at *3 (noting that the plaintiff's allegation of a "failure to communicate" was in actuality a criticism of the substance of the defendant's communication during trial and related proceedings). Here, ABLe's claim is premised on the lack of a communication, and we follow our own precedent that a failure to communicate information is not itself a communication.

However, to the extent that ABLe alleged conspiracy to commit and aiding and abetting of fraud by nondisclosure against E2 and Southwest, those claims are based on, related to, or in response to communications.[33] ABLe alleged that E2 and Southwest "had a meeting of the minds as to the object of their conspiracy" and "agreed and understood that the object of their goal was to commit the wrongful acts detailed above," that they attempted to conceal the alleged unlawful actions, that they were aware of Nguyen's unlawful acts, and that they "actively participated in, consented, encouraged[,] or assisted Nguyen" in doing those acts.

In the conspiracy and aiding and abetting sections of ABLe's fourth amended petition, ABLe does not describe what specific acts E2 and Southwest did to conspire with Nguyen or aid and abet him in his fraudulent nondisclosure. However, it incorporated the facts alleged elsewhere in its petition, and it alleged elsewhere that Nguyen solicited ABLe employees and customers and misappropriated ABLe's trade secrets. In the incorporated facts, ABLe implied that E2, Southwest, and Nguyen— knowing that ABLe would not agree to waive the Noncompete to allow Nguyen to work for E2 at DFW, solicit ABLe employees to work at DFW, or disclose ABLe's

_____

[33]In the section of its live pleading setting out its conspiracy claim, ABLe alleged that E2 and Southwest were in a conspiracy with Nguyen to breach Nguyen's fiduciary duties, steal ABLe's trade secrets, and tortiously interfere with ABLe's business relationships. However, in the heading for that section, it stated "Civil Conspiracy to Commit . . . Fraud by Nondisclosure." To the extent that ABLe asserted conspiracy to commit fraud by nondisclosure against E2 and Southwest, we address those claims.

trade secrets to enable E2 and Southwest to bid for work at DFW and perform its obligations there—concocted a plan wherein Nguyen would go work for E2 but represent that he would be working for Southwest in the hopes that Nguyen could persuade ABLe to release him from the Noncompete. ABLe pointed out several times in its pleadings that Nguyen was assigned an E2 email address as soon as he started his new job. It further asserted that Nguyen met with E2 in December 2017 and began assisting E2 with its bids for the DFW contracts and its recruiting of ABLe employees to work on those contracts, that Nguyen then put in his notice and asked ABLe principals to be excused from the Noncompete by falsely representing that he would be working for Southwest for clients other than DFW, and that he then started employment "with E2/Southwest" at DFW on January 15, 2018. ABLe's pleadings thus base its conspiracy and aiding and abetting claims on the three defendants forming a plan to bid on DFW contracts, solicit ABLe employees to work on those same contracts, and hide Nguyen's doing so from ABLe by falsely representing that he worked for Southwest, all of which require communications. Further, these communications were all related to—and in fact centered around—E2's bids on and work on the DFW contracts. Accordingly, unlike the fraud by nondisclosure claim against Nguyen, these claims against E2 and Southwest were subject to the TCPA. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(b).

The burden then shifted to ABLe to make a prima facie case for these claims, a burden ABLe did not meet. "In general, there is no duty to disclose without evidence

of a confidential or fiduciary relationship." *Bombardier*, 572 S.W.3d at 220. Employees owe a fiduciary duty to their employers, but they do not owe a duty to disclose plans to compete with their employer after their employment ends. *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 203 (Tex. 2002); *Abetter Trucking*, 113 S.W.3d at 510. Further, a party to a contract does not have a general duty to disclose the party's decision, made after execution of the contract, to not perform as promised. *See CLC Roofing, Inc. v. Helzer*, 594 S.W.3d 414, 426 (Tex. App.—Fort Worth 2019, no pet.). The fiduciary duty Nguyen owed to ABLe as its employee did not require him to disclose his plans to work for a competitor after he left ABLe or to disclose any plan to breach the Noncompete. Further, while Nguyen had a duty not to disclose ABLe's confidential information in communications with an ABLe competitor, no fiduciary duty required him to inform ABLe that he had communications with a competitor in preparation to go work for that competitor after ending his employment with ABLe. *See Abetter Trucking*, 113 S.W.3d at 510. We have further held that ABLe failed to produce any evidence that Nguyen participated in E2's efforts to secure the DFW contracts, that Nguyen had provided E2 and Southwest with ABLe's trade secrets, or that Nguyen had actively solicited ABLe's employees to leave employment with ABLe. ABLe therefore failed to make a prima facie case that E2 and Southwest conspired with Nguyen to not disclose such acts or that they aided and abetted his nondisclosure.

Additionally, to make its prima facie case, ABLe had to provide some evidence of injury. ABLe contended in its petition that it relied to its detriment on Nguyen's

59

omissions and misrepresentations about his post-ABLe employment plans, and it asserted in its TCPA response that had it known of Nguyen's intentions, "it would have taken additional actions necessary to attempt to protect its client/employee relationships and confidential information." Lopez made the same statement in his affidavit. On this record, however, no evidence shows that anything that Nguyen failed to disclose affected ABLe's employee or customer relationships and its confidential information or trade secrets. DFW is the only customer that ABLe showed it had lost to E2, and we have held that ABLe provided no evidence that E2 received any information from Nguyen to help it win those contracts. ABLe provided no evidence that Nguyen's communications with Southwest and E2 resulted in ABLe losing any customers or employees, whether because of Nguyen's actions or his failure to disclose information to ABLe, and thus it produced no evidence that Nguyen caused it injury and thus no evidence that E2 and Southwest's aiding and abetting or conspiring with Nguyen caused it any injury. *See Rogers v. Soleil Chartered Bank*, No. 02-19-00124-CV, 2019 WL 4686303, at *10 (Tex. App.—Fort Worth Sept. 26, 2019, no pet.) (mem. op.) (stating that general averments of damages do not meet a TCPA nonmovant's burden to establish a prima facie case); *see also Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005) (stating that the elements of civil conspiracy include damages as a result of the conspiracy); *Juhl v. Airington*, 936 S.W.2d 640, 643 (Tex. 1996) (requiring a showing of injury for liability based on the Restatement (Second) of Tort's "concert of action" theory, i.e., aiding and abetting); *see also Parker*, 514 S.W.3d at 225 (stating that a claim

60

for aiding and abetting, if it exists, "requires evidence that the defendant, with wrongful intent, substantially assisted and encouraged a tortfeasor in a wrongful act that harmed the plaintiff"); *Amegy Bank*, 525 S.W.3d at 882 (stating that the damages for aiding and abetting are those caused by the underlying tort). Because ABLe failed to show injury, it failed to make a prima facie case based on clear and specific evidence for its fraud by nondisclosure claim and, as such, failed to make a prima facie case that E2 and Southwest conspired with Nguyen to commit fraud by nondisclosure and aided and abetted him in committing such fraud. *See In re Lipsky*, 460 S.W.3d at 597 (agreeing that no clear and specific evidence established a prima facie case that two of the defendants made defamatory remarks against the plaintiff or conspired with a third defendant to publicly blame the plaintiff for well contamination and that the conspiracy claims against all parties should have been dismissed). We sustain this part of Appellants' issue.

### E. ABLe's claim for civil theft fails.

ABLe asserted a claim for civil theft based on Appellants' alleged theft of trade secrets under Section 134.003 of the Texas Civil Practice and Remedies Code. *See* Tex. Civ. Prac. & Rem. Code Ann. § 134.003. We noted above that TUTSA "displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret." *Id.* § 134A.007(a). However, even assuming that TUTSA does not preempt Section 134.003 with respect to trade secrets, we have held that ABLe failed to make a prima facie case of trade secret misappropriation. Appellee

argues in its brief that "some of the information subject to ABLe's claims were not trade secrets as defined by TUTSA." To the extent ABLe is arguing that ABLe had non-trade-secret confidential information misappropriated by Appellants, it failed to make a prima facie case of such misappropriation that would support a civil theft claim. Accordingly, this claim must be dismissed.

## F. ABLe is not entitled to injunctive relief related to the challenged claims.

"[W]hen a legal action is dismissed pursuant to the TCPA, all remedies available under that legal theory disappear with the dismissal of the action itself." *Van Der Linden v. Khan*, 535 S.W.3d 179, 203 (Tex. App.—Fort Worth 2017, pet. denied). We have held that the trial court should have dismissed the claims against E2 and Southwest. ABLe's requests for temporary and permanent injunctive relief to restrain them from committing the acts on which those claims were based must also be dismissed. *See id.*

As for injunctive relief against Nguyen, even assuming a past failure to disclose could support the awarding of injunctive relief, ABLe did not plead for injunctive relief related to Nguyen's alleged fraudulent failure to disclose, and thus ABLe was not entitled to injunctive relief with respect to that claim. As to the other challenged claims against Nguyen, because we have held that the trial court should have dismissed those claims, ABLe is not entitled to injunctive relief with respect to those claims. *See id.* We do not address whether ABLe is entitled to injunctive relief or any other remedy with

respect to the claims for breach of contract against Nguyen as those claims are not before us. We sustain the remainder of Appellants' issue.

## Conclusion

Having sustained Appellants' issue in part and overruled it in part, we reverse the trial court's denial of Appellants' motions to dismiss under the TCPA except as to the fraud by nondisclosure claim against Nguyen. We remand for the trial court to render a judgment of dismissal as to all of ABLe's claims against E2 and Southwest and all claims against Nguyen except ABLe's claims for breach of contract and fraud by nondisclosure and for further proceedings consistent with this opinion.


/s/ Mike Wallach
Mike Wallach
Justice

Delivered: April 30, 2020